*In re* E.L., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. W.L. *et al.*, Respondents-Appellants).

First District (5th Division)   Nos. 85—0682, 85—0931 cons.

Opinion filed January 23, 1987.

Steven Lubet, Julie Rademaker, Senior Law Student, and Andrew Missan, Law Student, all of Northwestern University Legal Clinic, and Harvey Grossman, of American Civil Liberties Union, all of Chicago, for appellants.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry and Paula M. Carstensen, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

A petition for adjudication of wardship was filed by the State on behalf of a minor on the grounds that the child had been abused by her parents within the meaning of section 2—4 of the Juvenile Court Act (Ill. Rev. Stat. 1981, ch. 37, pars. 702—4(2)(a)(iii), 702—4(2)(b)). The juvenile court granted petitioner's motion for summary judgment on the issue of abuse. Respondents subsequently moved the court to reconsider and vacate the summary adjudication. The trial judge denied this motion and respondents appealed from the summary judgment order.

We affirm.

On December 29, 1982, the State filed a petition for adjudication of wardship on behalf of E.L., a six-year-old minor. The petition charged the minor's parents, respondents in this case, with abuse of their daughter on the basis that they had committed or allowed to commit a sex offense and had subjected her to an environment detrimental to her welfare in violation of section 2—4 of the Juvenile Court Act (Ill. Rev. Stat. 1981, ch. 37, pars. 702—4(2)(a)(iii), 702—4(2)(b)).

Shortly after the State filed its petition for adjudication of wardship, respondents were indicted with creating child pornography. The indictment criminally charged both parents with (1) taking nude photographs of their six-year-old daughter in poses that exposed her genital area in a lewd manner, and (2) knowingly permitting said photographs of their child to be taken. Following a bench trial, respondent father, W.L., was found guilty of creating child pornography and was subsequently sentenced to one-year conditional discharge. Respondent mother, M.L., was acquitted of both charges. The appellate court affirmed W.L.'s conviction finding the photographs patently offensive in that they depicted the child's genitals in a lewd fashion and were suggestive of sexual activity.

The petition for adjudication of wardship was still pending in juvenile court at the time the criminal charges against respondents were resolved. Pursuant to those proceedings, a discovery deposition of the mother, M.L., was taken. In the deposition respondent mother testified that she had been present at the time the photographs in question were taken, that she knew there was film in the camera, and that she had not found it morally objectionable for her husband to have taken these photographs of their daughter.

The State subsequently moved the court for summary judgment on the issue of abuse. Attached to the State's motion were the following supporting documents: a certified copy of the father W.L.'s conviction for creating child pornography, the affidavit of the assistant State's Attorney involved in the prosecution of respondents on criminal charges, and excerpts of the mother's, M.L.'s, discovery deposition taken pursuant to the civil proceedings. The affidavit of the assistant State's Attorney was offered merely to establish that the photographs referred to by M.L. during her deposition testimony were the same as those forming the basis of her husband's conviction. Respondents filed a reply to the summary judgment motion arguing that their counsel's incompetency during the criminal proceedings had denied them the opportunity to litigate the issue of pornography and that they should not be afforded the opportunity to do the same. Attached to their reply were the discovery deposition of Sandra Row, a social worker involved in the case for over two years, and the affidavit of child psychiatrist, Dr. Henry Gault. Both of these witnesses testified that the photographs taken of E.L. by her father were neither obscene nor pornographic. Following a hearing on the motion, the trial judge concluded that E.L. had been the victim of sexual abuse and that the resulting home environment had been injurious to her welfare. As basis for its factual findings the court cited W.L.'s crimi-

nal conviction of creating child pornography and M.L.'s discovery deposition. The findings, however, were limited only to the time the photographs were taken and, as such, had no bearing on what had transpired in the home since the incident took place.

On February 27, 1985, a dispositional hearing was held on the petition for adjudication of wardship. At that time, the court heard the testimony of Sandra Row. Ms. Row stated that E.L. had remained in respondents' home since February 14, 1983, during which time no further incidents of abuse had been reported and she had not been subjected to an unfavorable home environment. The State maintained that E.L.'s interests would best be served by making her a ward of the court and by entering an order of supervision for the duration of one year. Respondents' motion for a directed finding, however, was granted and the trial court ordered that: (1) E.L. remain in the custody of her parents, (2) there be no adjudication of wardship, and (3) the case be closed.

Seeking to erase the stigma imposed on them by the initial finding of abuse, respondents next moved the court to reconsider and vacate its finding. In support of their motion, respondents offered the affidavit of Dr. Henry Gault. Dr. Gault, who considered the subject photographs not to be patently offensive, attempted to demonstrate, via video tape, that the alleged lewd poses were no more than a series of gymnastic-related movements devoid of any pornographic intent. After viewing the tape the court remained unpersuaded and thereby denied respondents' motion to reconsider.

On appeal, respondents argue that summary adjudication on the issue of abuse was improper because it failed to grant or deny relief; there were triable issues of fact raised by the supporting documents submitted in opposition to petitioner's motion, namely the affidavit of Dr. Gault and the deposition of Ms. Row; and summary adjudication of abuse was impermissible under sections 1—20, 4—6 and 4—8 of the Juvenile Court Act. Respondents further maintain that the finding of abuse violated M.L.'s due process rights since the question of abuse, as it pertained to her, was decided on the basis of her husband's prior criminal conviction.

OPINION

Before reaching the merits of this case, we first consider whether this court is without jurisdiction to hear this appeal. Petitioner argues that because there was no order of wardship or disposition rendered below, there can be no final judgment from which an appeal can be taken. We disagree.

■■ ■ A final judgment in a civil case is entered when the last order closes the case and leaves no issues to be decided. (*Zimmerman v. 1660 Condominium Association* (1984), 126 Ill. App. 3d 71, 466 N.E.2d 1158.) Under those circumstances, the court retains no jurisdiction over any issue, disputed or otherwise. (*Prado v. Evanston Hospital* (1979), 72 Ill. App. 3d 622, 390 N.E.2d 1270; *Casati v. Aero Marine Management Co.* (1976), 43 Ill. App. 3d 1, 356 N.E.2d 826.) Further, there is no requirement that the final ruling take any particular form or adjudicate the issues in any particular manner. (*In re J.N.* (1982), 91 Ill. 2d 122, 435 N.E.2d 473.) The singular most important determination is whether the litigation has been terminated. *Wasserman v. Rosengarden* (1980), 84 Ill. App. 3d 713, 406 N.E.2d 131.

■ On February 27, 1985, the juvenile trial court in the instant case ordered that E.L. remain in the custody of her parents, that there be no adjudication of wardship, and that the case be closed. In ruling thus, the court clearly retained no jurisdiction over any issue. The State itself concedes that the court's ruling effectively brought the subject litigation to a final resolution. We unavoidably conclude the same and therefore must hold that the judgment handed down on February 27 was final.

■ We further note that although the court's finding of abuse was interlocutory and, therefore, nonappealable at the time it was made, this changed when the court entered its final order on February 27, 1985, disposing of the entire case on its merits. It is well established that an order remains interlocutory, with regard to its appealability, only so long as no final order has been entered. Once a final order is entered, all prior nonfinal orders and rulings become appealable. *Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, 394 N.E.2d 380; see also *Dick Lashbrook Corp. v. Pinebrook Foundation, Inc.* (1985), 134 Ill. App. 3d 56, 479 N.E.2d 1229; *American International Hospital v. Chicago Tribune Co.* (1983), 120 Ill. App. 3d 435, 458 N.E.2d 1305; *Conover v. Smith* (1974), 20 Ill. App. 3d 258, 314 N.E.2d 638; *Lakeview Trust & Savings Bank v. Estrada* (1985), 134 Ill. App. 3d 792, 480 N.E.2d 1312.

Lastly, respondents here filed their notice of appeal after the final order was entered. This case is therefore distinguishable from those where the notice of appeal has been filed while further litigation is pending. See, *e.g., In re Lee* (1979), 73 Ill. App. 3d 449, 392 N.E.2d 304.

Having brought forth for our review a ruling that had been made appealable by a subsequent final order of the trial court, respondents

correctly invoked the jurisdiction of this court.

■■ We next determine whether summary judgment was properly granted below. In urging us to vacate the summary adjudication of abuse respondents first argue that such ruling was improper because it failed to grant or deny the relief sought in the State's petition, namely that "the minor be adjudged a ward of the court."

Under sections 2—1005(a) and (b) of the Civil Practice Act (Ill. Rev. Stat. 1983, ch. 110, pars. 2—1005(a), (b)) a party wishing to do so may move for summary judgment or decree in his favor for all or any part of the relief sought. It is immaterial that the movant has other claims before the court not subject to partial summary adjudication upon which he may obtain relief. (*Brewer v. Daubert Chemical Co.* (1979), 72 Ill. App. 3d 718, 391 N.E.2d 110.) A summary decree is interlocutory in nature and, consequently, may be rendered on one issue alone even though triable issues of fact may exist on other matters. Ill. Rev. Stat. 1983, ch. 110, par. 2—1005(c); *Harold Butler Enterprises v. Underwriters at Lloyds, London* (1981), 100 Ill. App. 3d 681, 427 N.E.2d 312.

The State in the instant case was required to prove under sections 2—1 and 4—8(1) and (2) of the Juvenile Court Act (Ill. Rev. Stat. 1981, ch. 37, pars. 702—1, 704—8(1), (2)) that E.L. had been abused before proceeding to establish that it was in the best interests of the child to make her a ward of the court. The finding of abuse was, therefore, an essential portion of the adjudication of wardship since without such a finding petitioner would have been unable to proceed to disposition. We thus hold that the trial court's summary finding of abuse alone was properly rendered because it pertained to a portion of the relief sought.

■■ Respondents next contend that there were triable issues of fact raised by the supporting documents submitted in opposition to petitioner's motion. These included the affidavit of child psychiatrist, Dr. Henry Gault, and the deposition of social worker, Sandra Row. Both individuals were of the opinion that the photographs in question were neither obscene nor pornographic. According to Dr. Gault, the photographs were not the kind that would "appeal to prurient interests." Ms. Row testified that she believed the average male would become angered rather than sexually stimulated by said photographs.

It is a well established principle of law that supporting documents opposing a motion for summary judgment must recite facts and not mere conclusions or statements based on information and belief. (*Brewer v. Daubert Chemical Co.* (1979), 72 Ill. App. 3d 718, 391 N.E.2d 110.) Where such allegations of facts are lacking, the docu-

ments will be held insufficient to defeat a motion for summary judgment. *Brewer v. Daubert Chemical Co.* (1979), 72 Ill. App. 3d 718, 391 N.E.2d 110.

■ The documents purported to have raised issues of fact in the instant case in essence recited that the photographs were neither pornographic nor obscene. Rather than being supported by facts, however, these bare statements amounted to mere conclusions. In addition, respondents never attempted to show why the photographs depicting their daughter in compromising poses were taken or what were the attending circumstances, if any, surrounding their decision to allow such photographs to be taken. Finally, the claim by the affiant and deposed that the photographs would likely not appeal to the prurient interest of the average person is irrelevant when one considers that photographs such as these are not destined to be looked at by the average person but rather by the likes of pedophiles.

■■ The Juvenile Court Act (Ill. Rev. Stat. 1981, ch. 37, par. 701—1 *et seq.*) has vested broad discretionary powers in the courts to reach a just determination in child abuse or neglect cases. (*In re Stilley* (1977), 66 Ill. 2d 515, 363 N.E.2d 820.) In determining whether a child has been subjected to abuse or neglect, the court will look to the specific circumstances surrounding such allegation (*In re D.M.C.* (1982), 107 Ill. App. 3d 902, 438 N.E.2d 254), and then ask whether the person responsible for the care of the minor has failed to exercise the care that circumstances justly demand (*In re Johnson* (1981), 102 Ill. App. 3d 1005, 429 N.E.2d 1364). For the purposes of the Juvenile Court Act, the failure to exercise the care that circumstances justly demand embraces wilful as well as unintentional disregard of parental duty. *In re Christenberry* (1979), 69 Ill. App. 3d 565, 387 N.E.2d 923; *In re Brooks* (1978), 63 Ill. App. 3d 328, 379 N.E.2d 872.

■ Respondent father in the instant case took a series of photographs of his six-year-old daughter which displayed the child's genitals in a manner that appears to be suggestive of sexual activity. These photographs later formed the basis for the father's conviction for creating child pornography. Respondent mother testified in her discovery deposition that she was present during the photo session and that she saw nothing wrong with their content. In his affidavit, Assistant State's Attorney Andry verified that the photos referred to in the mother's deposition were the same ones used to convict respondent father. Having been presented with these facts, the trial court concluded that the State's evidence supported the finding that E.L. had been abused by her parents and that the home environment created by such conduct has been injurious to her welfare. We believe

the trial court exercised its sound discretion in reaching the above conclusion and that the evidence presented left no issue of material fact in dispute.

■■ Further, there is nothing in the record that would support respondents' contention that they were not afforded the procedural safeguards guaranteed by the Juvenile Court Act. Section 1—20 of the Act (Ill. Rev. Stat. 1981, ch. 37, par. 701—20) specifically provides that parties to proceedings conducted under the Act "have the right to be present, to be heard, to present evidence material to the proceedings, [and] to cross-examine witnesses." The record in the instant case reveals that the finding of abuse was the direct result of a full evidentiary hearing. Evidence was presented by both parties in the form of testimony, affidavit, deposition, and video tape. The State presented evidence by way of a copy of the father's criminal conviction, the affidavit of Assistant State's Attorney Andry, and the discovery deposition of the mother, M.L. Respondents, on the other hand, submitted the affidavit of Dr. Gault and the discovery deposition of Ms. Row. Moreover, respondents were present during all phases of the hearings. As such, they had ample opportunity to explain their actions and to rebut the State's evidence by means of cross-examination or presenting additional evidence. That respondents were not able to persuade the court to exonerate them from the charges of abuse brought forth by the State appears to be more a function of the weaknesses inherent in their case rather than a failure of the judiciary to adhere to the procedural safeguards provided in the Act.

■■ ■ Due process is not a technical concept unrelated to time, place, and circumstances; rather, it is flexible and calls for such procedural protections as a particular situation demands. (*In re Stephenson* (1977), 67 Ill. 2d 544, 367 N.E.2d 1273.) Procedural aspects of due process require that a person be given notice and an opportunity to be heard and to defend in an orderly proceeding adapted to the case. (*In re Marriage of Mierlak* (1981), 100 Ill. App. 3d 228, 426 N.E.2d 1010.) Due process is not denied when a party fails to avail himself of the opportunity to be heard after it is offered to him. (*Grant, Schon, Wise v. R. W. Borrowdale Co.* (1983), 114 Ill. App. 3d 89, 448 N.E.2d 574.) While section 1—20 of the Juvenile Court Act (Ill. Rev. Stat. 1981, ch. 37, par. 701—20(1)) entitles respondents to certain rights including the right to be present and to cross-examine witnesses, the proceedings are not intended to be adversary in character. The primary concern is the best interests and welfare of the child. *In re Brooks* (1978), 63 Ill. App. 3d 328, 379 N.E.2d 872.

Looking, as he was required to do, to the totality of the circum-

34

stances, the trial judge in the instant case based his finding of abuse on all the evidence presented by the parties. This included not only the copy of the father's, W.L.'s, criminal conviction, but also the mother's, M.L.'s, discovery deposition where she admitted to being present while the photographs were taken and to have approved of their content.

■■ Under the circumstances, the trial judge was justified in concluding that respondent mother had also failed to exercise the care that the circumstances justly demanded by either stopping the on-going photo-taking session or by assertively voicing her disapproval of her husband's conduct. She did neither. In fact the record reveals that the mother, M.L., seeing nothing wrong with what was taking place, joined her daughter and actively participated by posing nude with her in positions highly suggestive of sexual activity.

As the record establishes that an adequate evidentiary hearing was conducted and that the trial judge adhered to the procedures and underlying purpose of the Juvenile Court Act, its finding of abuse as to both parents must be affirmed.

The judgment of the trial court is affirmed.

Affirmed.

SULLIVAN, P.J., and MURRAY, J., concur.